# BLANKROME

1271 Avenue of the Americas | New York, NY 10020
blankrome.com

*Phone:*    (212) 885-5130
*Fax:*      (212) 885-5001
*Email:*    MKrezalek@BlankRome.com

June 6, 2022

**VIA ECF FILING**

The Honorable John G. Koeltl
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 14A
New York, NY 10007-1312

Re:    *Kaiser Aluminum Warrick, LLC v. US Magnesium, LLC*, Case No. 1:22-cv-3105 (JGK)

Dear Judge Koeltl,

      We are counsel for US Magnesium, LLC ("US Mag"). We write, to inform the Court that US Mag intends to file a motion to strike, and in the alternative, to dismiss, the April 14, 2022 Complaint (the "Complaint"), and to request a pre-motion conference pursuant to Rule II (B) of the Court's Individual Practices. The bases of the Motion are set forth below.

      **I.    MOTION TO STRIKE.** US Mag has been a supplier of magnesium to Plaintiff ("Kaiser") and Kaiser's predecessors for many years, and the parties have always maintained an amicable working relationship. In a Magnesium Supply Agreement ("MSA") dated October 9, 2020, US Mag agreed to supply Kaiser's predecessor with certain quantities of magnesium for two years. At all times prior to its declaration of force majeure, US Mag faithfully performed its obligations under the MSA. At all times, US Mag maintained its facilities and equipment by way of diligent and timely inspection, service, and repair.

      In 2021, in the midst of the Covid-19 pandemic, US Mag experienced unexpected and sudden damage to critical production equipment, which materially impaired US Mag's capacity in essential steps in the manufacture of the magnesium chloride feed that is critical to its magnesium production. Initially, US Mag determined that reserve equipment at its facility could serve to meet production schedules until the damaged systems were fully restored. However, US Mag found that as it deployed the reserve equipment, manpower services and replacement parts for the damaged systems were substantially delayed by Covid-related logistical barriers. As a result of the delays, the necessary heavy reliance on reserve equipment imposed unanticipated stress on the system. On September 29, 2021, by which time all other options had been exhausted, US Mag was compelled to declare "force majeure" or "commercial impracticability" under all of its customer agreements. At present, US Mag remains under a condition of force majeure, while all of its manpower and material resources have been singularly channeled into the effort to repair its equipment, resume full production, and restore its customer relationships.

      If Kaiser has suffered any harm due to US Mag's "force majeure," such harm has been merely the inconvenience and expense of securing "cover" magnesium so that Kaiser could

Honorable John G. Koeltl
June 6, 2022
Page -2-

continue to produce aluminum cans for the North American food/beverage industry. Kaiser's pleadings demonstrate that Kaiser does not purport to be suffering from any irreparable harm; it seeks only money damages for its alleged expense in securing cover. Nevertheless, Kaiser has resorted to scorched earth tactics to apply inordinate & improper pressure on its long-time supplier.

Since the force majeure condition has not even resolved yet, and there is a liberal limitations period at issue, one wonders why Kaiser was so quick to file suit? The answer appears obvious. Now pending before the International Trade Commission is a "Five-Year Sunset Review" of certain U.S. tariffs that have been imposed on pure magnesium from the People's Republic of China. As Kaiser is well-aware, that ITC proceeding is of critical import to US Mag because Chinese magnesium, if dumped in large quantities into the American market, would pose an existential threat to US Mag, which is one of the last two producers of pure magnesium in North America. If antidumping duties on these Chinese imports are retracted, US Mag will face extraordinary challenges. The ITC review has commenced and is expected to be resolved in the first half of next year.

Kaiser's prematurely-filed lawsuit has the unfortunate, and apparently intended, prospect of delaying US Mag's efforts to restore its equipment and diverting critical resources from that effort. But, Kaiser also appears to be trying to use this lawsuit as leverage in the ITC hearings, and vice versa. Thus, while Kaiser is not an "interested party" under ITC regulations, Kaiser has submitted briefing in the ITC "Sunset Review," purporting to encourage a "full review" and revocation of the subject tariffs—with the apparent purpose of intimidating and threatening US Mag. Meanwhile, in this litigation, which should deal with a very straightforward dispute over alleged breach of a commercial supply agreement, Kaiser has cherry-picked misleading excerpts from an ITC hearing that occurred in 2019, and thrown them into the Complaint as a purported means to bolster its breach-of-contract allegations. The Court can see that these impertinent comments come from a completely unrelated proceeding dealing with commercial imports and trade policy, having nothing whatsoever to do with the alleged breach at issue in this case. Viewed in context, these comments do not support, and indeed contradict, the allegations of Kaiser's Complaint. The material has been introduced, in other words, solely for improper and scandalous purposes, i.e., to threaten, intimidate, and harass US Mag. US Mag will move to strike all references to the ITC proceedings pursuant to Federal Rule of Civil Procedure 12(f), which states that the Court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," and that the Court may act "on its own" or on a motion made by a party "before responding to a pleading."

**II.    MOTION TO DISMISS.**  In the alternative, US Mag will move to dismiss Kaiser's Complaint for failure to state a claim. Kaiser's Complaint attempts to plead two causes of action. Count I is titled, "Breach of Contract – Safety Stock." Kaiser alleges that after declaring force majeure, US Mag failed to provide Kaiser a 60-day "safety stock" of magnesium, *over and above* any pro rata allocation of supply that Kaiser would otherwise receive of US Mag's available inventory. *See* NY UCC § 2-615 (stating that party asserting excuse by failure of presupposed conditions must allocate available supplies among all customers in a "fair and reasonable

Honorable John G. Koeltl
June 6, 2022
Page -3-

manner"). Count I assumes that US Mag has properly declared force majeure, but alleges that "the MSA's force majeure provisions do not relieve the party declaring a Force Majeure Event from the obligation to maintain a 60-day safety stock." (Compl. ¶ 55.). Under federal law, if a contract attached to a complaint contradicts the complainant's allegations, the court need not accept the allegations as true. Instead, the contract controls. Here, the MSA states that if US Mag declares force majeure, then Kaiser *"<u>shall receive a pro rata allocation</u> of the available total volume of such Product at such facility(ies), based upon the percentage of Purchaser's contracted volume of such product during such year in relation to Seller's total contracted volumes of such Product from such facility(ies) during such year*." (MSA ¶ 20(d).) Kaiser's allegation that it was entitled to 60-day *bonus* supply of material *on top of* the pro rata allocation that other customers were to receive, contradicts the New York UCC, established UCC jurisprudence, and the MSA's plain declaration that Kaiser is entitled to nothing more than its "pro rata" share.

Count II of Kaiser's Complaint also suffers deficiencies. Count II is an action for "Improper Force Majeure Declaration," in which Kaiser alleges that US Mag's "force majeure" is purportedly improper, because it was purportedly caused by US Mag's alleged failure to maintain its equipment in proper condition. Kaiser's Complaint attaches not only the parties' agreement, but several additional documents. At least one of these documents does not support and/or contradicts the Complaint's allegations. *See Amidax Trading Gp v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146–47 (2d Cir. 2011) ("[W]e need not 'credit a complaint's conclusory statements without reference to its factual context.' … Furthermore, where a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true." (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009)). Another document merely purports to show a vague, anonymous internet comment from someone purporting to be a former US Mag employee—which does not pass the plausibility threshold. *See id.* at 147 ("Furthermore, Amidax's reliance on a single conclusory statement from an anonymous source … is insufficient to make plausible an allegation that Amidax was somehow injured."). Whereas Kaiser's Complaint relies on wholly extrinsic evidence that improperly seeks to unfairly prejudice the Court and improperly bolster the allegations of the Complaint, the Complaint's allegations should be rejected.

While US Mag has submitted a proposed scheduling order pursuant to Rule 26(f), the proposed schedule did not anticipate or address how deadlines would be affected by motion practice and attendant delays in the filing of initial pleadings. US Mag looks forward to addressing this and other issues at the conference on its proposed motion, or at the Initial Conference presently scheduled for June 16, 2022.[1]

                                                  Respectfully submitted,
                                                  */s/ Martin S. Krezalek*
                                                  Martin S. Krezalek

---

[1] US Mag has separately requested an adjournment of the June 16 conference to accommodate the schedule of its incoming co-counsel.