

mwe.com

Andrew B. Kratenstein
Partner
akratenstein@mwe.com
+1 212 547 5400

June 9, 2022

<u>VIA ECF</u>

The Honorable John G. Koeltl
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 14A
New York, NY 10007-1312

Re: *Kaiser Aluminum Warrick, LLC v. US Magnesium, LLC*, Case No. 1:22-cv-3105 (JGK)

Dear Judge Koeltl,

  We are counsel for Plaintiff Kaiser Aluminum Warrick, LLC ("Kaiser") and write in response to the letter filed by Defendant US Magnesium, LLC ("US Mag") on June 6, 2022 ("US Mag's Letter") requesting a pre-motion conference concerning US Mag's prospective motion to strike, or in the alternative, to dismiss Kaiser's Complaint. US Mag's Letter, its prospective motion, and its proposed protracted case schedule (which would not have this case trial ready until April 2024) are all consistent with US Mag's long-running efforts to obfuscate the issues and delay resolution of this dispute.

  This case arises from US Mag's breach of its Magnesium Supply Agreement (the "MSA") with Kaiser. On September 29, 2021, US Mag declared force majeure under the MSA (the "Force Majeure Declaration") based on a purported "unanticipated failure of critical pieces of manufacturing infrastructure." (Compl. ¶ 29, Ex. B.) As detailed in the Complaint, US Mag retracted the explanation it initially provided to Kaiser about the nature and cause of the equipment failure and, despite repeated requests, has provided very little information since. (Compl. ¶¶ 30-35, 37-50; Exs. F-O.)

  US Mag's Letter's explanation of what gave rise to the Force Majeure Declaration raises more questions than it answers. US Mag does not explain what "critical production equipment" was damaged or why that damage was unforeseeable and could not have been avoided in the exercise of reasonable care through routine maintenance or otherwise. (US Mag's Letter at 1.) US Mag then claims that its deployment of "reserve equipment, manpower services and replacement parts for the damaged systems were substantially delayed by COVID-related logistical barriers", but does not explain what those "barriers" were or why they could not have been foreseen by September 2021 (when the COVID pandemic started approximately 18 months earlier in March 2020). (*Id.*) Nor does US Mag provide any details for the "unanticipated stress" that "heavy reliance on reserve equipment" purportedly imposed on the system. (*Id.*) In any event, these are all factual issues for discovery.



One Vanderbilt Avenue  New York NY 10017-3852  Tel +1 212 547 5400  Fax +1 212 547 5444

*US practice conducted through McDermott Will & Emery LLP.*

The Honorable John G. Koeltl
June 9, 2022
Page 2

  US Mag then asks, "why Kaiser was so quick to file suit?" (US Mag Letter at 2.) The answer is simple. Kaiser was not "quick" to file suit. As the Complaint alleges, for six months before filing this lawsuit, Kaiser sought information from US Mag about the cause of the Force Majeure Declaration, the repair schedule, and projected product shipment volumes so that Kaiser could appropriately plan to meet the needs of Kaiser's customers. (Compl. ¶¶ 42-50; Exs. F-O.) Kaiser also sought access to information sufficient for Kaiser's insurers to determine if insurance coverage is available to mitigate Kaiser's damages. (Compl. Ex. N.) Kaiser even went so far as to send a draft of the complaint to US Mag in the hope that US Mag would finally engage so that litigation could be averted. US Mag refused to meaningfully engage.

  Having not received sufficient information or cooperation from US Mag, Kaiser reluctantly decided to exercise its rights and remedies under the MSA. As the Court well knows, lawsuits take time to resolve. Kaiser was not required to wait until the Force Majeure Declaration was lifted or until the statute of limitations nearly expired to sue. Kaiser is suffering substantial damages *now* and will continue to do so unless and until the Force Majeure Declaration is lifted.

  In a transparent diversionary tactic, US Mag asserts that Kaiser is "trying to use this lawsuit as leverage" in proceedings before the International Trade Commission (the "ITC") relating to commercial magnesium imports. (US Mag's Letter at 2.) That is false. To the contrary, Kaiser is advocating in the ITC proceedings that tariffs on magnesium be lifted because the combination of US Mag's Force Majeure Declaration and tariffs on Chinese magnesium imports have made it exorbitantly expensive for Kaiser (a domestic aluminum producer) to obtain cover magnesium to replace the magnesium that US Mag has not been supplying to Kaiser since the Force Majeure Declaration. Eliminating those tariffs would actually help Kaiser mitigate its damages by lowering magnesium prices.

  US Mag also seeks permission to strike from the pleadings Kaiser's references to prior ITC proceedings in which Cam Tissington, US Mag's Vice President of Sales, testified that low magnesium prices were forcing US Mag to "defer all but very essential maintenance" and that US Mag has "been forced to reduce [its] capital investments significantly since 2014." (Compl. ¶ 33; Compl. Ex. D at 22.) "Motions to strike are disfavored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter." *Forschner Grp., Inc. v. B-Line A.G.*, 943 F. Supp. 287, 291 (S.D.N.Y. 1996) (internal quotations and citation omitted). Mr. Tissington's testimony obviously has bearing on the subject matter of the litigation as that testimony supports Kaiser's claim that the purported equipment failure that gave rise to the Force Majeure Declaration was foreseeable and avoidable had US Mag not deferred all but very essential maintenance or reduced its capital investments. Because the allegations in question relate directly to the subject matter of the litigation, they are not "redundant, immaterial, impertinent, or scandalous matter," Fed. R. Civ. P. 12(f), and they should not be stricken particularly before discovery. *See Tel. Sys. Int'l, Inc. v. Cecil*, No. 02 CV 9315(GBD), 2003 WL 22232908, at *3 (S.D.N.Y. Sept. 29, 2003) (denying motion to strike and noting that courts are "very reluctant to determine disputed or substantial issues of law on a motion to strike; these questions quite properly are viewed as determinable *only after discovery* and a hearing on the merits") (emphasis added, internal quotations and citation omitted).



The Honorable John G. Koeltl
June 9, 2022
Page 3

US Mag also seeks permission to move to dismiss both counts of Kaiser's Complaint for failure to state a claim. Both arguments fail.

Count I of the Complaint alleges that US Mag violated the provision of the MSA requiring US Mag to maintain a 60-day "safety stock" of magnesium and offer this stock to Kaiser for sale in the event of a disruption to US Mag's normal production of magnesium. (Compl. ¶¶ 51-58). This provision states: "At all times during the term of this Agreement, Seller shall carry a safety stock of sixty (60) days of Purchaser's average consumption." (MSA ¶ 2(d).) The purpose of the safety stock provision is to ensure a steady and reliable supply of magnesium for at least 60 days in the event that supply is interrupted for any reason. *See AbbVie Endocrine Inc. v. Takeda Pharm. Co. Ltd.*, No. CV 2020-0953-SG, 2021 WL 4302920, at *4 (Del. Ch. Sept. 22, 2021) ("Safety stock is inventory, separate from firm orders placed, that generally acts as a backup in the event of a supply chain disruption or a failure to order the sufficient amount of product.").

US Mag argues that the safety stock provision is superseded by a separate provision of the MSA, which states that, in the event of a force majeure declaration, US Mag must distribute to Kaiser a "pro rata allocation" of the available total volume of magnesium. (MSA ¶ 20(d).) However, this interpretation would render the safety stock provision superfluous, as US Mag was required to maintain and supply Kaiser with safety stock in the event of *any* supply disruption. Reading both clauses of the contract together and consistently, in the event of a force majeure declaration, US Mag was first required to supply sixty (60) days' worth of safety stock and, only if and when the safety stock was exhausted would Kaiser then receive its pro rata allocation product.

Count II of the Complaint alleges that US Mag's Force Majeure Declaration was improper and US Mag's failure to perform under the MSA constitutes a breach of the contract. (Compl. ¶¶ 59-69.) US Mag argues that Count II should be dismissed because the "Complaint relies on wholly extrinsic evidence that improperly seeks to unfairly prejudice the Court and improperly bolster the allegations of the Complaint." (US Mag's Letter at 3.) However, the Complaint alleges that US Mag advised Kaiser the night that the Force Majeure Declaration was sent that the declaration was caused by "the breakdown of a pump that moves magnesium chloride slurry to the dryers" and "the machine that broke was a known bottleneck in the facility, and that it was a piece of equipment from the 1970s for which parts were not easily replaceable." (Compl. ¶ 31.) US Mag subsequently retracted that explanation (Compl. Ex. L) presumably because US Mag knows full well that such a statement would render the Force Majeure Declaration improper as any such breakdown should have been foreseeable and avoidable through diligent maintenance and adequate spare parts requisition procedures. *See Gulf Oil Corp. v. FERC*, 706 F.2d 444, 452 (3d Cir. 1983) (holding that, to invoke force majeure clause "as an excuse to nonperformance, the event must have been beyond the party's control and without its fault or negligence"); *Phibro Energy, Inc. v. Empresa De Polimeros De Sines Sarl*, 720 F. Supp. 312, 318-19 (S.D.N.Y. 1989) ("unanticipated mechanical breakdowns *may* constitute force majeure," but the event "must be unforeseeable as well") (emphasis added) (citations omitted). Accordingly, any motion to dismiss Count II should be denied.



The Honorable John G. Koeltl
June 9, 2022
Page 4

      Kaiser looks forward to addressing these and other issues pertaining to this matter at the initial conference now scheduled for June 30, 2022.

Respectfully submitted,

Andrew B. Kratenstein

cc: All counsel of record via ECF

