
**mwe.com**

Andrew B. Kratenstein
Partner
akratenstein@mwe.com
+1 212 547 5695

February 1, 2023

VIA ECF

Hon. John G. Koeltl
United States District Court
Southern District of New York
500 Pearl Street, Room 1030
New York, NY 10007

      Re:    *Kaiser Aluminum Warrick, LLC v. US Magnesium, LLC*, Case No. 1:22-cv-03105-JGK

Dear Judge Koeltl:

      On behalf of Plaintiff Kaiser Aluminum Warrick, LLC ("Kaiser"), I write pursuant to Rule II.B of the Court's Individual Practices and Local Civil Rule 37.2 to request a pre-motion conference concerning Kaiser's proposed motion to compel defendant US Magnesium, LLC ("US Mag") to produce its financial statements, general ledger, and trial balance for the three fiscal years immediately preceding the events giving rise to US Mag's force majeure declaration on September 29, 2021 (the "Force Majeure Declaration") and the fiscal years (to date) since the Force Majeure Declaration (collectively, the "US Mag Financial Documents").

      This case arises from US Mag's failure to perform its magnesium supply obligations under a Magnesium Supply Agreement (the "MSA") with Kaiser. US Mag contends that an "unanticipated failure of critical pieces of manufacturing infrastructure" led to its Force Majeure Declaration. (ECF No. 43, Am. Compl. ¶¶ 3-4, 33-34, Ex. B.) US Mag reduced its supply to Kaiser in October 2021, then suddenly and without warning, further reduced its supply in June 2022, and, ultimately, in August 2022, halted all magnesium deliveries to Kaiser for the remainder of the MSA's term. (*Id.* ¶¶ 33-34, 46, 59-69, Exs. P-Q.) US Mag claims that its performance was excused by the doctrines of force majeure, impossibility, impracticability, and frustration of purpose. (ECF No. 36, First through Fourth Affirmative Defenses.)

      It is well-settled that, as the party seeking to excuse its nonperformance, US Mag must prove that its nonperformance is excused by unforeseeable events beyond US Mag's reasonable control.[1] Likewise,

---

[1] *Phillips Puerto Rico Core, Inc. v. Tradax Petroleum, Ltd.*, 782 F.2d 314, 319 (2d Cir. 1985) ("The burden of demonstrating force majeure is on the party seeking to have its performance excused . . . and . . . the non-performing party must demonstrate its efforts to perform its contractual duties despite the occurrence of the event that it claims constituted force majeure.") (internal quotations and citations omitted); *Gulf Oil Corp. v. FERC*, 706 F.2d 444, 452 (3d Cir. 1983) (holding that, to invoke force majeure clause "as an excuse to nonperformance, the event must have been beyond the party's control and without its fault or



One Vanderbilt Avenue  New York NY 10017-3852  Tel +1 212 547 5400  Fax +1 212 547 5444

*US practice conducted through McDermott Will & Emery LLP.*

Hon. Jon G. Koeltl
February 1, 2023
Page 2

"[i]mpossibility and frustration of purpose refer to two distinct doctrines in contract law, but both require unforeseeability."[2]  Finally, US Mag must show that "it tried to overcome the results of the events' occurrences by doing everything within its control to prevent or to minimize the event's occurrence and its effects."[3]  Failing to maintain equipment obviously can result in foreseeable equipment failures as can failing to have the necessary funds on hand or using funds that could have been used for maintaining equipment for other purposes.  Such circumstances would defeat US Mag's asserted defenses.

Kaiser believes, and the evidence will show, that the "equipment failures" giving rise to the Force Majeure Declaration were foreseeable, within US Mag's control, and not without US Mag's fault.  For example, on November 14, 2018, in testimony before the United States International Trade Commission, US Mag's Vice President of Sales lamented that magnesium imports were driving down magnesium prices.  He stated that, in the case of at least one piece of critical equipment, low market prices were causing US Mag to "defer all but very essential maintenance" and "we have been forced to reduce our capital investments significantly since 2014."  (Am. Compl. ¶ 38, Ex. D at 22.)  In addition, in a comment dated July 28, 2021, on the job search web site Indeed.com, a US Mag lab technician based in Salt Lake City wrote in a review of US Mag:  "Lastly, upper management is more concerned about fixing 40 year old equipment with parts from other 40 year old equipment rather than buying new equipment so there is some lengthy downtime at times."  (*Id.* ¶ 39, Ex. E.)

Although US Mag's document production still is not complete, documents that US Mag has produced confirm Kaiser's concerns and demonstrate that, for at least *ten years* prior to the Force Majeure Declaration, US Mag deferred essential maintenance on its equipment purportedly due to financial constraints.[4]  Yet Kaiser cannot fully explore and test these assertions as US Mag has refused to produce the US Mag Financial Documents.

Moreover, documents produced by US Mag also suggest that funds needed to maintain its plant may have been used for other purposes.  For example, US Mag reportedly invested over $60 million in constructing a lithium plant during 2019 and 2020.[5]  Kaiser is entitled to explore fully the source of those funds and whether they could have been used to modernize the magnesium plant's aging equipment, which was decades old at the time of the Force Majeure Declaration.

---

negligence"); *Phibro Energy, Inc. v. Empresa De Polimeros De Sines Sarl*, 720 F. Supp. 312, 318-19 (S.D.N.Y. 1989) ("unanticipated mechanical breakdowns may constitute force majeure," but the event "must be unforeseeable as well") (citations omitted).

[2] *Beardslee v. Inflection Energy, LLC*, 904 F. Supp. 2d 213, 221 (N.D.N.Y. 2012).

[3] *Gulf Oil*, 706 F.2d at 454.  The MSA likewise requires US Mag to "exercise due diligence to eliminate or remedy the force majeure event."  (Am. Compl. Ex. A ¶ 20(b).)

[4] US Mag has marked these documents Confidential or Attorney's Eyes Only under the Protective Order (ECF No. 24).  Kaiser will follow this Court's procedures for filing these documents under seal and US Mag will have to defend its confidentiality designations.

[5] http://tooeleonline.com/us-mag-breaks-ground-on-lithium-facility/ (last visited Jan. 31, 2023).



Documentary evidence also suggests that money that could have been used for needed maintenance and repairs may have been distributed to US Mag's sole owner, The Renco Group ("Renco"), for the benefit of Renco's owner, Ira Rennert. Indeed, Renco and Mr. Rennert were previously found liable for more than $200 million for stripping US Mag's predecessor of assets for Renco's and Mr. Rennert's personal benefit.[6] If US Mag's Financial Documents demonstrate that funds were distributed to Renco, Mr. Rennert, or others when those funds were needed to maintain and/or make needed repairs to the plant's equipment, those facts are not only relevant to overcoming US Mag's asserted defenses, but also would be relevant to demonstrating misconduct that could vitiate the damages limitations that are the subject of US Mag's pending partial motion to dismiss (ECF Nos. 48-52).[7]

It would not be an undue burden for US Mag to produce its Financial Documents. US Mag has not claimed otherwise in its objections or during the parties' meet and confer process. Instead, US Mag has refused to produce its Financial Documents solely on the grounds that they are purportedly irrelevant.

Respectfully, US Mag is wrong. Given US Mag's defenses of force majeure, impossibility, impracticability, and frustration of purpose, Kaiser should be able to evaluate fully and fairly (including through cross-examination) whether US Mag had the financial resources to maintain its plant and to understand why, if it did not, US Mag lacked those resources.[8]

Kaiser has corresponded and conferred with US Mag's counsel repeatedly on this issue, most recently during a telephonic meet and confer on January 30, 2023. During that meet and confer, US Mag's counsel maintained its objection to producing the US Mag Financial Documents and has confirmed that Kaiser has satisfied is meet and confer obligations. Accordingly, Kaiser seeks permission to move to compel US Mag to produce the US Mag Financial Documents. As fact discovery is currently scheduled to close on April 28, 2023 (ECF No. 42), Kaiser respectfully requests expedited consideration.

Respectfully submitted,

Andrew B. Kratenstein

cc: All Counsel of Record via ECF



---

[6] *See Buchwald v. The Renco Group, Inc.*, 539 B.R. 31 (S.D.N.Y. 2015), *aff'd*, 682 Fed. Appx. 24 (2d Cir. 2017).

[7] *See, e.g.*, *Abacus Fed. Savings Bank v. ADT Sec. Servs., Inc.*, 18 N.Y.3d 675, 683 (N.Y. 2012) ("exculpatory clauses and liquidated damages clauses in contracts are not enforceable against allegations of gross negligence").

[8] *See, e.g.*, *J.P. Morgan Ventures Energy Corp. v. Miami Wind I, LLC*, 77 Misc. 3d 1218(A), at *3-4 (Sup. Ct. N.Y. Co. 2022) (finding genuine issues of material fact existed as to whether "financial considerations" excused defendant's performance under the parties' contract).