**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————————————————

**KAISER ALUMINUM WARRICK, LLC,**

                    **Plaintiff,**                    **22-cv-3105 (JGK)**

          **- against -**                    **Memorandum Opinion**
                                             **& Order**

**US MAGNESIUM LLC,**

                    **Defendant.**

————————————————————————————

**JOHN G. KOELTL, District Judge:**

The plaintiff, Kaiser Aluminum Warrick, LLC ("Kaiser"), and
the defendant, US Magnesium LLC ("US Mag"), contracted for US
Mag to supply magnesium to Kaiser at a fixed price for 2021 and
2022. After US Mag failed to supply the contracted magnesium,
Kaiser brought this action for breach of contract. US Mag now
moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to
dismiss portions of Kaiser's amended complaint for failure to
state a claim. ECF No. 48. For the reasons explained below, the
motion to dismiss is **denied without prejudice.**

**I.**

**A.**

Unless otherwise noted, the following facts are drawn from
the amended complaint, ECF No. 43 ("Am. Compl."), and are
accepted as true for the purposes of this motion.

The plaintiff, Kaiser, produces aluminum coil for the
beverage and food packaging industry in North America. Id. ¶ 14.

The defendant, US Mag, produces magnesium and other chemical products processed from salts in the Great Salt Lake. Id. ¶ 15.

The parties entered into a Magnesium Supply Agreement ("MSA"), effective October 9, 2020, whereby US Mag would sell to Kaiser at specific prices certain quantities of pure magnesium ingot (the "Product"), an essential component of many of Kaiser's products.[1] Id. ¶¶ 1-2, 21, 24-25. The MSA requires US Mag to maintain a 60-day supply of "safety stock" to ensure a reliable supply of Product in the event of supply disruptions. Id. ¶ 27; ECF No. 43-1 ("MSA"), at ¶ 2(d). The MSA also contains a force majeure clause, which states: "If the performance of this Agreement by either party is delayed, curtailed, interrupted or prevented for reasons reasonably beyond such party's direct control . . . such party will be excused from the performance of its obligations under this Agreement for so long as the Force Majeure Event continues." Am. Compl. ¶ 28; MSA ¶ 20(a). The MSA requires a party invoking the force majeure clause to "give written notice to the other party within 10 days of the occurrence of the Force Majeure Event," to "exercise due diligence to eliminate or remedy the Force Majeure Event," and to "notify the other party when the Force Majeure Event is

---

[1] US Mag entered the original MSA with Alcoa Warrick LLC. Am. Compl. ¶ 21. Kaiser Aluminum Corporation then purchased the equity in Alcoa Warrick LLC, which was renamed Kaiser Aluminum Warrick, LLC. Id. ¶ 22. There is no dispute that Kaiser is the real party in interest and the beneficiary of US Mag's obligations under the MSA. Id.

2

remedied or removed." Am. Compl. ¶ 29; MSA ¶ 20(b).

On September 29, 2021, US Mag informed Kaiser by email that it was "declaring a force majeure condition for all magnesium products manufactured and shipped from its Rowley, Utah manufacturing facility." ECF No. 43-2 (the "Force Majeure Declaration"); see also Am. Compl. ¶ 33. The Force Majeure Declaration stated that the force majeure condition was caused by an "unanticipated failure of critical pieces of manufacturing infrastructure" that resulted in the "limited availability of the magnesium chloride feed that is basic to the production of magnesium metal." Force Majeure Declaration; see also Am. Compl. ¶ 34.

On September 30, 2021, Kaiser began contacting other manufacturers to cover the anticipated supply shortfalls of the Product in view of the Force Majeure Declaration. Am. Compl. ¶ 41. On October 1, 2021, Kaiser asked that its 60-day safety stock be made available before any allocations were made to other purchasers. Id. ¶ 43; ECF No. 43-7. The same day, US Mag rejected Kaiser's safety stock request on the grounds that the force majeure provision excused US Mag's duty to comply with the safety stock provisions in the MSA. Am. Compl. ¶ 44; ECF No. 43-8. Ultimately, Kaiser was unable to acquire enough cover magnesium and eventually declared force majeure on its own supply agreements. Am. Compl. ¶¶ 62-63.

**B.**

Kaiser filed this action against US Mag on April 14, 2022.
ECF No. 1. In the operative amended complaint, filed on
September 27, 2022, Kaiser alleges that US Mag breached the MSA
by failing to supply magnesium based on an improper force
majeure declaration (Count I) and, separately, by failing to
supply Kaiser with the 60-day safety stock (Count II). Am.
Compl. ¶¶ 71-92. Kaiser alleges that because of US Mag's failure
to meet its contractual obligations, Kaiser was forced to
"enter[] into new contracts for additional magnesium deliveries
at prices substantially higher than the MSA prices." Id. ¶ 57.
Kaiser further alleges that US Mag's breach caused Kaiser
"substantial business and operational disruption" and "damaged
Kaiser's relationships with its customers and its overall
reputation as a reliable supplier, which has damaged Kaiser in
both quantifiable and unquantifiable ways." Id. ¶ 58.

On Count I, Kaiser seeks at least $85 million in
compensatory damages "to cover the out-of-pocket costs and lost
profits incurred by Kaiser as a result of US Mag's failure to
supply Kaiser with the quantities of magnesium required under
the MSA at the prices contained in the MSA." Id. ¶ 94(a). On
Count II, in the event that US Mag is deemed to have breached
only the MSA's safety stock provision, Kaiser seeks compensatory

damages of at least $13 million. Id. ¶ 94(b). Kaiser also seeks to recover its attorney's fees and costs. Id. ¶ 94(d).

US Mag now moves pursuant to Rule 12(b)(6) to dismiss Kaiser's claims for "(i) incidental and consequential damages, (ii) cover damages in excess of the parties' contractual limitation on such damages, and (iii) attorneys' fees." Not. of Mot. to Dismiss, ECF No. 48. US Mag argues that the MSA prohibits consequential and incidental damages beyond cover costs, that the MSA limits US Mag's liability for any damages to the purchase price of the Product under the MSA, and that neither the MSA nor any statute allows Kaiser to recover its attorney's fees. Def.'s Memo., ECF No. 49, at 4, 12, 15.

## II.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550

U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).[2]

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." <u>Id.</u> When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002).

### III.

This dispute centers on Paragraph 8 of the MSA, which states:

> Seller's liability with respect to this Agreement and the Material purchased under it shall not exceed the purchase price of the shipment of such Material as to which liability arises and Seller shall not be liable for any injury, loss or damage resulting from the handling or use of the materials shipped hereunder

---

[2] Unless otherwise noted, this Memorandum Opinion & Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

whether in manufacturing process or otherwise. In no
event shall Seller be liable for incidental or
consequential damages.

MSA ¶ 8.

US Mag argues that Paragraph 8 unambiguously prohibits
incidental or consequential damages and limits US Mag's
liability to the Product's purchase price under the MSA. Def.'s
Memo. at 5. Therefore, US Mag argues, because Kaiser seeks to
recover damages beyond cover costs -- including lost profits
from contracts with third-party customers, diminution in its
reputation, and diversion of time and labor at a cost greater
than the Product's purchase price -- Kaiser's prayer for such
relief is barred. Id. at 9, 11. Kaiser responds that it may
recover its requested damages because Paragraph 8 limits
liability only for claims involving materials "purchased" and
"shipped" under the MSA. Pl.'s Opp., ECF No. 50, at 10.

While both parties argue that the plain language of
Paragraph 8 unambiguously supports their propositions, the
contract is ambiguous as to whether these damages are limited.
Under New York law, the Court may construe a contract as a
matter of law only if the contract is unambiguous on its
face. See Metro. Life Ins. Co. v. RJR Nabisco Inc., 906 F.2d
884, 889 (2d Cir. 1990); Postlewaite v. McGraw-Hill, Inc., 411

F.3d 63, 67 (2d Cir. 2005).[3] A contract is unambiguous if it has "a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d 1091, 1095 (2d Cir. 1993). Where the contractual language is subject to more than one reasonable meaning and where extrinsic evidence of the parties' intent exists, the question of the proper interpretation should be submitted to the trier of fact unless the extrinsic evidence is so one-sided that no reasonable jury could find in favor of the non-moving party. See 3Com Corp. v. Banco do Brasil, S.A., 171 F.3d 739, 746-47 (2d Cir. 1999); Consarc Corp. v. Marine Midland Bank, N.A., 996 F.2d 568, 573 (2d Cir. 1993).

In this case, there is a question of fact whether Paragraph 8 limits US Mag's liability for damages to the price of the material purchased only where magnesium has actually been purchased and shipped under the MSA. US Mag understandably points to the concluding sentence of Paragraph 8, providing that "in no event shall Seller be liable for incidental or consequential damages," to argue that those damages are excluded in this case. Def.'s Memo. at 5-6; see also, e.g., Farkar Co. v.

---

[3] The MSA is governed by New York law. MSA ¶ 21.

R. A. Hanson DISC, Ltd., 583 F.2d 68, 71 (2d Cir. 1978) (holding that the provision, "in no event shall [defendant] be liable for special or consequential damages," without any other limitations, unambiguously excluded special or consequential damages). In support of this interpretation, US Mag argues that Paragraph 8 is a general paragraph that applies to seller's liability "with respect to this Agreement," not only with respect to "the Material purchased under it," and therefore precludes liability for "incidental or consequential damages" with respect to the Agreement -- including the failure to deliver material required by the Agreement.

But it is also plausible, as Kaiser argues, that Paragraph 8 limits liability only for claims involving "Material purchased under" the MSA and "materials shipped hereunder." Pl.'s Opp. at 10. Paragraph 8 is not a limitation of liability that extends to "any claims arising out of or related to" the MSA. Cf., e.g., My Play City, Inc. v. Conduit Ltd., 589 F. App'x 559, 562 (2d Cir. 2014). Instead, Paragraph 8 deals with "Seller's liability with respect to this Agreement **and** the Material purchased under it." MSA ¶ 8 (emphasis added). Under this reading, Paragraph 8 is meant to limit liability for defective material or material that otherwise causes damages and limits liability for such damages to the "purchase price of the shipment of such Material as to which liability arises." Id. According to Kaiser, the paragraph

deals specifically with defective material -- whether the defects arise from the handling or the manufacturing of the material -- not to material that was never shipped. Accordingly, on Kaiser's plausible reading, because the Product at issue was never delivered due to US Mag's Force Majeure Declaration, Kaiser's recovery is not limited by Paragraph 8.

Because there is more than one reasonable interpretation of Paragraph 8, the provision is ambiguous. The question of the proper interpretation of MSA cannot be decided on a motion to dismiss but must await further developments of the record, including discovery and possible motions for summary judgment. See, e.g., Powe v. Cambium Learning Co., No. 08-cv-1963, 2009 WL 2001440, at *5 (S.D.N.Y. July 9, 2009). Therefore, US Mag's motion to dismiss portions of the Amended Complaint is **denied without prejudice.**

### IV.

Generally, a party that prevails on a breach of contract claim is not entitled to attorney's fees. See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975); U.S. Naval Inst. v. Charter Commc'ns, Inc., 936 F.2d 692, 698 (2d Cir. 1991). However, courts have the inherent authority to award attorney's fees against a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers v.

NASCO, Inc., 501 U.S. 32, 45-46 (1991); see also Sorenson v. Wolfson, 170 F. Supp. 3d 622, 633 (S.D.N.Y. 2016).

The parties agree that a prevailing litigant is not ordinarily entitled to reimbursement of attorney's fees in a case for breach of contract. See Def.'s Memo. at 15; Pl.'s Opp. at 22. There also is no language in the MSA providing for the recovery of attorney's fees. See MSA ¶ 21. However, the question remains whether this is one of those unusual cases where attorney's fees are warranted for bad faith. Therefore, US Mag's motion to dismiss Kaiser's prayer for attorney's fees is **denied without prejudice**.

### CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons explained above, US Mag's motion to dismiss is **denied without prejudice**.

The Clerk is directed to close ECF No. 48.

**SO ORDERED.**

Dated:     New York, New York
           June 6, 2023

                                    _____
                                        John G. Koeltl
                                 United States District Judge