**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KAISER ALUMINUM WARRICK, LLC, a Delaware limited liability company, <br><br>     Plaintiff, <br><br> vs. <br><br> US MAGNESIUM, LLC, a Delaware limited liability company, <br><br>     Defendant. | **US MAGNESIUM, LLC'S ANSWER TO PLAINTIFF'S AMENDED COMPLAINT** <br><br><br><br> Civil No. 22-Civ-3105 |

US Magnesium, LLC ("US Mag") hereby submits this Answer to the Amended Complaint filed by Kaiser Aluminum Warrick, LLC (hereafter, "Plaintiff" or "Kaiser").

**I.   PRELIMINARY STATEMENT**

The backdrop for this case is an era of catastrophic and unprecedented global disruptions in nearly every facet of social and economic life.  The Covid-19 pandemic that began in early 2020 has imposed not only an unprecedented global health toll, but unprecedented supply chain disruptions and catastrophic labor shortages.

Magnesium, as asserted in Kaiser's complaint, is a raw material that can be used in the production of aluminum cans for the North American food and beverage industry.  Magnesium is also used to manufacture automobile components, evasive and illumination flares and flameless heater meal packets for Meals Ready to Eat. It is used in the production of low-sulfur steel, aluminum alloys, ductile iron and the production of transition metals such as titanium and

zirconium.  Magnesium is considered a "critical material" to the government of the United States, and US Mag is one of two producers of primary magnesium in North America.

US Mag's production of magnesium is technical and complex. The system involves corrosive chemicals, extreme temperatures, enormous amounts of energy, and highly specialized processes and equipment.  There are several distinct stages in the manufacturing process and, unlike some other industrial production systems, the stages of production are inextricably interdependent.  Moreover, in the event of damage or disruption in one stage of the system, the manufacturing process as a whole cannot simply be shut down to facilitate repairs.  Instead, the system must be continually active and continually producing magnesium to avoid extensive damage to system components.  Finally, hiring labor and securing services at the US Mag plant is constrained by its somewhat remote location as well as a need for specialized technical expertise.

US Mag has been a supplier of magnesium to Plaintiff and Plaintiff's predecessors for many years and the parties have at all times maintained an amicable and productive working relationship.  In a Magnesium Supply Agreement ("MSA") dated October 9, 2020, US Mag agreed to supply Plaintiff's predecessor with certain quantities of magnesium for a period of two years.  At all times prior to its declaration of force majeure ("Force Majeure Declaration"), US Mag faithfully performed its obligations under the MSA, both in relation to Plaintiff's predecessor and to Plaintiff.  At all times, US Mag maintained its facilities and equipment by way of diligent and timely inspection, service, and repair.

In 2021, in the midst of the Covid-19 pandemic, US Mag experienced unexpected and sudden damage to critical production equipment on multiple occasions, which materially impaired US Mag's capacity in essential steps in the manufacture of the magnesium chloride

feed that is critical to its magnesium production.  Initially, US Mag determined that reserve equipment at its facility could serve to meet production schedules until the damaged systems were fully restored.  However, US Mag found that as it deployed the reserve equipment, manpower services and replacement parts for the damaged systems were delayed by logistical barriers. As a result of the delays, the necessary heavy reliance on reserve equipment imposed unanticipated stress on the system. The combination of challenges led to inconsistent magnesium chloride feed results.  Although US Mag undertook every effort to restore its equipment and maintain the needed production levels, US Mag was not able to reach production capacity sufficient to resume normal operations.  Therefore, on September 29, 2021, US Mag declared "force majeure" and thereafter limited magnesium sales to its existing customer base, using its best efforts to effect a fair and equitable allocation.  Notably, in the MSA, Kaiser expressly agreed that in the event of a force majeure, it would receive only a *pro rata* allocation of US Mag's remaining inventory.

At all times, US Mag has worked, and continues to work, diligently to restore its equipment and bring production back to full capacity.  Supply chain disruptions and labor shortages related to the Covid-19 pandemic, however, hampered US Mag's efforts to promptly obtain the necessary parts, equipment, supplies and skilled contractors to complete all repairs. As a result of these limitations in acquiring equipment, parts, and other supplies, US Mag was forced to idle its facility and cease production of magnesium in August 2022.  At all times, however, US Mag provided Plaintiff reasonable updates as to progress in the repairs and anticipated availability of future supplies.

The force majeure clause in the parties' MSA provides that in the event of a disruption beyond the reasonable control of a party, that party is excused from contractual performance

until the force majeure condition has abated.  At all times, US Mag has complied with this force

majeure provision.  Moreover, at all times, US Mag made fair and reasonable allocation of

available supplies to its existing customers, as was its contractual duty and right.

Accordingly, Plaintiff's Complaint is without merit under New York law.

US Mag responds to the specific allegations of the Complaint as set forth below.

## II.    ANSWER

1.    As to the allegations of paragraph 1, US Mag states that it entered into a

Magnesium Supply Agreement ("MSA"), effective October 9, 2020.  The MSA speaks for itself,

and US Mag denies any characterization of the document that is inconsistent with its terms.  US

Mag denies that it is in breach of its obligations under the MSA. Except as expressly admitted

herein, the allegations of paragraph 1 are denied.

2.    The allegations of paragraph 2 pertain exclusively to Plaintiff Kaiser and its

business affairs.  US Mag is without sufficient knowledge to admit or deny the allegations of

paragraph 2, and therefore denies the same.

3.    As to the allegations of paragraph 3, US Mag admits that the parties have bought

and sold magnesium in accordance with the MSA.  US Mag admits that on September 29, 2021,

it sent Kaiser a Force Majeure Declaration.  Except as expressly admitted herein, the allegations

of paragraph 3 are denied.

4.    As to the allegations of paragraph 4, US Mag states that its Force Majeure

Declaration and MSA speak for themselves.  US Mag specifically denies each and every

characterization of the Force Majeure Declaration contained in paragraph 4 of the Complaint.

Except as expressly admitted herein, the allegations of paragraph 4 are denied.

5.     Responding to the allegations of paragraph 5, US Mag states that paragraph 2(d) of the MSA references a 60-day "safety stock" of magnesium.  However, contrary to the allegations of paragraph 5, the MSA does not state nor insinuate that the "safety stock" was intended "for sale to Kaiser in the event of a supply disruption."  Nor does the "safety stock" provision purport to take precedence over the separate and independent force majeure clause. The force majeure provision of the MSA states, in pertinent part:

> If the performance of this Agreement by either party is delayed, curtailed, interrupted, or prevented for reasons reasonably beyond such party's direct control, such as strikes, labor difficulties, lockouts, accidents, fires, explosions, inundations, volcanic activity, rebellion, revolution, blockade, embargo, environmental directives, or any other act of any governmental authority, acts of public enemies, acts of God, inability or delays in obtaining transportation, ***or any other cause, whether or not of the nature enumerated above, which is reasonably beyond the control of such party ("Force Majeure Event"), such party will be excused from the performance of its obligations under this Agreement for so long as the Force Majeure Event continues.***  The excused party's performance under this Agreement will resume as soon as practicable after the Force Majeure Event is remedied or removed.

(Emphasis added.)

US Mag states that the force majeure clause, as enumerated above, relieves the party invoking force majeure of all obligations under the MSA, without exception.  This would necessarily include any obligation on the part of US Mag to maintain a 60-day safety stock of magnesium for Plaintiff.  US Mag has therefore asserted, and does assert, that its Force Majeure Declaration excused US Mag of any safety stock obligation.  Except as expressly admitted herein, the allegations of paragraph 5 are denied.

6.     As to the allegations of paragraph 6, US Mag is without knowledge of the effect of its Force Majeure Declaration on Plaintiff's business operations, nor its relationships with its

customers. US Mag specifically denies any wrongdoing in respect of its Force Majeure Declaration. Except as expressly admitted herein, the allegations of paragraph 6 are denied.

7.      As to the allegations of paragraph 7, US Mag is without knowledge of the effect of its Force Majeure Declaration on Plaintiff's business operations, nor any prices that Plaintiff purportedly paid to obtain magnesium from other suppliers. Except as expressly admitted herein, the allegations of paragraph 7 are denied.

8.      The allegations of paragraph 8 are denied.

9.      The allegations of paragraph 9 are denied.

10.     The allegations of paragraph 10 are denied.

11.     As to the allegations of paragraph 11, US Mag is without knowledge of the effect of its Force Majeure Declaration on Kaiser's business operations, Kaiser's ability to cover, or the purported need or basis of Kaiser declaring force majeure in July 2022. US Mag states that paragraph 8 of the MSA expressly and unambiguously states "In no event shall Seller be liable for incidental or consequential damages." Any insinuation or claim that Kaiser has lost profits purportedly as a result of US Mag's actions is expressly disclaimed by the plain terms of the MSA. Except as expressly admitted herein, the allegations of paragraph 11 are denied.

12.     Responding to the allegations of paragraph 12, US Mag states that, despite ongoing diligent efforts, US Mag has not yet completed the repairs necessary to return its magnesium plant to full production. US Mag affirmatively states that, pursuant to the terms of the MSA, US Mag supplied magnesium to Plaintiff after the Force Majeure Declaration occurred, based on its capacity and a fair and reasonable allocation. As a result of downstream damage to its equipment, and lack of readily available supplies, equipment, and manpower, US Mag was forced to idle its facility to complete additional repairs to its spray dyer and electrolysis

equipment in August 2022.  These repairs are ongoing due to the extensive nature of the unanticipated and unpreventable disruptions to US Mag's operations.  Except as expressly admitted herein, the allegations of paragraph 12 are denied.

13.    The allegations of paragraph 13 are denied.

## PARTIES

14.    US Mag is without sufficient knowledge to respond to the allegations of paragraph 14 and therefore denies the same.

15.    Responding to the allegations of paragraph 15, US Mag states that it is a Delaware limited liability company with its principal place of business in Salt Lake City.  US Mag admits that its sole member is The Renco Group, Inc. ("Renco"), which was incorporated in New York and has its principal place of business in New York.  US Mag admits that it produces magnesium and other chemical products.  Except as expressly admitted herein, the allegations of paragraph 15 are denied.

16.    US Mag admits that Renco is its sole member. Except as expressly admitted herein, the allegations of paragraph 16 are denied.

17.    The allegations of paragraph 17 are admitted.

18.    The allegations of paragraph 18 are admitted.

19.    The allegations of paragraph 19 are admitted.

20.    The allegations of paragraph 20 are admitted.

## FACTUAL ALLEGATIONS

21.    The allegations of paragraph 21 are admitted.

22.    As to the allegations of paragraph 22, US Mag is without knowledge of Kaiser's purchase of any equity interest in Alcoa Warrick, LLC from Alcoa USA Corp.  US Mag admits

that Kaiser assumed the role of purchaser from Alcoa under the MSA.  Except as expressly admitted herein, the allegations of paragraph 22 are denied.

23.     As to the allegations of paragraph 23, US Mag states that the MSA speaks for itself.  US Mag denies any characterization of the MSA that is inconsistent with its terms.  US Mag states that Kaiser was not a party to the MSA at the time of its negotiation and US Mag therefore denies Kaiser's interpretation and stated intent in assuming Alcoa Warrick, LLC's obligations under the MSA.  Except as expressly admitted herein, the allegations of paragraph 23 are denied.

24.     Responding to the allegations of paragraph 24, US Mag states that the MSA speaks for itself.  US Mag denies any characterization of the MSA that is inconsistent with its terms.  Except as expressly admitted herein, the allegations of paragraph 24 are denied.

25.     Responding to the allegations of paragraph 25, US Mag states that the MSA speaks for itself.  US Mag denies any characterization of the MSA that is inconsistent with its terms.  Except as expressly admitted herein, the allegations of paragraph 25 are denied.

26.     Responding to the allegations of paragraph 26, US Mag states that the MSA speaks for itself.  US Mag denies any characterization of the MSA that is inconsistent with its terms.  Except as expressly admitted herein, the allegations of paragraph 26 are denied.

27.     Responding to the allegations of paragraph 27, US Mag states that the MSA speaks for itself.  US Mag denies any characterization of the MSA that is inconsistent with its terms. More specifically, US Mag denies Plaintiff's allegation that "the purpose of the safety stock provision is to ensure a steady and reliable supply of Product for at last [sic] 60 days in the event that supply is interrupted for any reason."  This allegation finds no support in the language of the MSA.  Indeed, supply interruptions of a certain character were specifically addressed in

the MSA's force majeure clause, which exempted the party invoking the force majeure from all performance under the MSA without exclusions. The safety stock provision, then, was intended to address only those supply or demand issues outside the scope of a force majeure event—including, but not limited to, transportation problems, quality problems, technical issues within the Kaiser facility, and/or unexpected increases in Plaintiff's need or demand for magnesium. Except as expressly admitted herein, the allegations of paragraph 27 are denied.

28.     Responding to the allegations of paragraph 28, US Mag states that the MSA speaks for itself. US Mag denies any characterization of the MSA that is inconsistent with its terms. Except as expressly admitted herein, the allegations of paragraph 28 are denied.

29.     Responding to the allegations of paragraph 29, US Mag states that the MSA speaks for itself. US Mag denies any characterization of the MSA that is inconsistent with its terms. Except as expressly admitted herein, the allegations of paragraph 29 are denied.

30.     Responding to the allegations of paragraph 30, US Mag states that the MSA speaks for itself. US Mag denies any characterization of the MSA that is inconsistent with its terms. Except as expressly admitted herein, the allegations of paragraph 30 are denied.

31.     Responding to the allegations of paragraph 31, US Mag states that the MSA speaks for itself. US Mag denies any characterization of the MSA that is inconsistent with its terms. Specifically, Plaintiff's allegations in respect of the purposes for the "safety stock," or the relationship between the "safety stock" clause and the force majeure clause, are without foundation in, and contrary to, the MSA. Except as expressly admitted herein, the allegations of paragraph 31 are denied.

32.     The allegations of paragraph 32 are denied.

33.     The allegations of paragraph 33 are admitted.

34.     Responding to the allegations of paragraph 34, US Mag states that its Force Majeure Declaration speaks for itself.  US Mag denies any characterization of the Force Majeure Declaration that is inconsistent with its terms.  Except as expressly admitted herein, the allegations of paragraph 34 are denied.

35.     Responding to the allegations of paragraph 35, US Mag states that its Force Majeure Declaration speaks for itself.  US Mag denies any characterization of the Force Majeure Declaration that is inconsistent with its terms.  US Mag denies any suggestion that its Force Majeure Declaration was insufficient under the MSA.  Except as expressly admitted herein, the allegations of paragraph 35 are denied.

36.     Responding to the allegations of paragraph 36, US Mag admits that on or about September 29, 2021, its employee, Tom Kurilich, spoke with Nate Kane from Kaiser.  US Mag denies Plaintiff's characterization of that conversation.  Except as expressly admitted herein, the allegations of paragraph 36 are denied.

37.     The allegations of paragraph 37 are too vague to allow US Mag to form a reasonable response.  US Mag denies Plaintiff's characterization of any comments made by Tom Kurilich.  Except as expressly admitted herein, the allegations of paragraph 37 are denied.

38.     Responding to the allegations of paragraph 38 and the footnote included therewith, US Mag admits that on November 18, 2018, its Vice President of Sales, Cameron Tissington, provided testimony before the United States Trade commission in support of anti-dumping orders pertaining to magnesium from Israel.  The referenced testimony speaks for itself, and must be read in context.  US Mag denies any characterization of Mr. Tissington's comments that is inconsistent with the comments in their proper context.  Except as expressly admitted herein, the allegations of paragraph 38 and the footnote included therewith are denied.

10

39.     The allegations of paragraph 39, together with any underlying statements or assumptions purportedly proffered by an unidentified person, are denied.  Kaiser's representations that US Mag has not denied or provided evidence refuting the aspersions of an anonymous author of a public website are false and expressly denied.

40.     The allegations of paragraph 40 are denied.

41.     US Mag is without sufficient knowledge to admit or deny the allegations of paragraph 41, and therefore denies the same.

42.     Responding to the allegations of paragraph 42, US Mag admits that on September 30, 2021, its employee Tom Kurilich received the email shown in Exhibit F to Plaintiff's Complaint.  US Mag denies the assertions, allegations, and insinuations in Plaintiff's email. Except as expressly admitted herein, the allegations of paragraph 42 are denied.

43.     Responding to the allegations of paragraph 43, US Mag admits that on October 1, 2021, its employee Tom Kurilich received the email shown in Exhibit G to Plaintiff's Complaint. US Mag denies the assertions, allegations, and insinuations in Plaintiff's email.  In particular (among other things), given US Mag's force majeure condition, US Mag specifically denies that it had any obligation to provide Plaintiff the 60-day "safety stock" as demanded.  To the contrary, the MSA's Force Majeure provision expressly exempted US Mag from all performance under the MSA until abatement of the force majeure condition.  Except as expressly admitted herein, the allegations of paragraph 43 are denied.

44.     Responding to the allegations of paragraph 44, US Mag admits that on October 1, 2021, Mr. Tissington sent the letter shown in Exhibit H to Plaintiff's Complaint.  The referenced letter speaks for itself, and US Mag denies any characterization of the letter that is inconsistent with its terms.  US Mag affirmatively states that its pro rata allocation among its customers was

in accord with, and expressly required by, the MSA.  Indeed, the MSA states that when a force

majeure is declared, the "Purchaser" (Kaiser) was entitled to receive nothing more or less than a

"pro rata allocation of the available total volume of such Product...." (MSA ¶ 20(d).)  Except as

expressly admitted herein, the allegations of paragraph 44 are denied.

45.      The allegations of paragraph 45 are denied.

46.      Responding to the allegations of paragraph 46, US Mag admits that on October 5,

2021, it sent the email shown in Exhibit I to Plaintiff's Complaint. The referenced email speaks

for itself, and US Mag denies any characterization of the email that is inconsistent with its terms.

US Mag affirmatively asserts that the projections provided in this October 5, 2021 were made in

the utmost good faith. US Mag further asserts that it did honor the volume commitment made in

the referenced October 5th email.  In that regard, the dates on which material is picked up from

the US Mag facility are determined by the Kaiser Transportation Group and not by US Mag.  US

Mag's records show that while some of Plaintiff's October purchase order volume was picked up

in late September and some was picked up in early November, all of the October volume was

supplied as promised.  Except as expressly admitted herein, US Mag denies the allegations of

paragraph 46.

47.      Responding to the allegations of paragraph 47, US Mag admits that on October 6,

2021, US Mag received the letter shown in Exhibit J to Plaintiff's Complaint.  US Mag denies

the assertions, allegations, and insinuations in Plaintiff's letter.  In particular (among other

things), given the force majeure condition, US Mag denies that it had any obligation to deliver

the "safety stock" as demanded by Plaintiff.  US Mag further denies that it had any obligation to

provide "weekly" updates to Plaintiff.  US Mag affirmatively states that at all times, US Mag

provided reasonable and timely notice of any updates in regard to its force majeure condition. Except as expressly admitted herein, US Mag denies the allegations of paragraph 47.

48.     Responding to the allegations of paragraph 48, US Mag admits that on October 19, 2021, US Mag received the letter shown in Exhibit K to Plaintiff's Complaint. US Mag again denies the assertions, allegations, and insinuations in Plaintiff's letter. Except as expressly admitted herein, US Mag denies the allegations of paragraph 48.

49.     Responding to the allegations of paragraph 49, US Mag admits that on October 25, 2021, it delivered the letter shown in Exhibit L to Plaintiff's Complaint. The referenced letter speaks for itself, and US Mag denies any characterization of the letter that it inconsistent with its terms. US Mag specifically denies that the referenced letter was in any way "obfuscatory." Except as expressly admitted herein, US Mag denies the allegations of paragraph 49.

50.     Responding to the allegations of paragraph 50, US Mag again states that the referenced letter dated October 25, 2021, speaks for itself, and US Mag denies any characterization of the letter that is inconsistent with its terms. Except as expressly admitted herein, US Mag denies the allegations of paragraph 50.

51.     Responding to the allegations of paragraph 51, US Mag admits that on October 28, 2021, it sent the letter shown in Exhibit M to Plaintiff's Complaint. The referenced letter speaks for itself, and US Mag denies any characterization of the letter that is inconsistent with its terms. US Mag states that the October 28 letter accurately reflected US Mag's circumstances and expectations at that time. Despite diligent effort, however, US Mag was not able to restore its equipment as quickly as originally hoped. Except as expressly admitted herein, US Mag denies the allegations of paragraph 51.

52.     Responding to the allegations of paragraph 52, US Mag states that, despite diligent effort, it was not able to complete all of the required repairs by November 20, 2021.  US Mag admits that on November 22, 2021, it received the letter shown in Exhibit N to Plaintiff's Complaint.  US Mag denies the assertions, allegations, and insinuations in Plaintiff's letter. Except as expressly admitted herein, US Mag denies the allegations of paragraph 52.

53.     Responding to the allegations of paragraph 53, US Mag admits that it sent another letter to Plaintiff on or about February 24, 2022, as reflected in Exhibit O to Plaintiff's Complaint.  US Mag denies any suggestion or insinuation that the letters and emails referenced in Plaintiff's Complaint constitute all of the communications exchanged between the parties in connection with the Force Majeure Declaration.  The February 24, 2022 letter speaks for itself, and US Mag denies any characterization of that letter that is inconsistent with its terms.  Further, US Mag specifically denies that it had any obligation to grant Plaintiff or its insurer access to the US Mag facilities for Plaintiff's unilateral "investigations."  US Mag further asserts that there is no provision in the MSA granting Plaintiff such a right. Except as expressly admitted herein, US Mag denies the allegations of paragraph 53.

54.     Responding to the allegations of paragraph 54, US Mag asserts that its First Amended Answer (ECF No. 36) speaks for itself.  The allegations of paragraph 54 are disparaging legal arguments without foundation.  Covid-19 disruption affected nearly every aspect of life, including US Mag's production abilities, access to manpower, and access to equipment and supplies.  Covid-19 supply disruptions delayed US Mag from accessing needed manpower, parts, and supplies necessary to resolve its force majeure equipment outages.  Except as expressly admitted herein, US Mag denies the allegations of paragraph 54.

55.     The allegations of paragraph 55 are denied.

14

56.     Responding to the allegations of paragraph 56, US Mag asserts that at all times, it has acted in good faith in providing Plaintiff reasonable updates and forecasts for the supply of magnesium anticipated to be available; and US Mag undertook extraordinary effort to supply available material to Plaintiff, so as to prevent or limit any disruption to Plaintiff's business activities.  Except as expressly admitted herein, US Mag denies the allegations of paragraph 56.

57.     As to the allegations of paragraph 57, US Mag is without knowledge of the effect of its Force Majeure Declaration on Plaintiff's business operations, Kaiser's ability to cover, or the alleged need or basis for Kaiser to purchase scrap aluminum.  US Mag expressly denies that it failed to meet its contractual obligations under the MSA.  Except as expressly admitted herein, US Mag denies the allegations of paragraph 57.

58.     As to the allegations of paragraph 58, US Mag is without knowledge of purported efforts by Kaiser to acquire magnesium or its requirements to qualify magnesium suppliers and therefore denies these allegations.  US Mag denies the remaining allegations of paragraph 58.

59.     Responding to the allegations of paragraph 59, US Mag asserts that at all times, it has acted in good faith in providing Plaintiff reasonable updates and forecasts for the supply of magnesium anticipated to be available; and US Mag undertook extraordinary effort to supply available material to Plaintiff, so as to prevent or limit any disruption to Plaintiff's business activities.  Except as expressly admitted herein, US Mag denies the allegations of paragraph 59.

60.     Responding to the allegations of paragraph 60, US Mag asserts that at all times, it has acted in good faith in providing Plaintiff reasonable updates and forecasts for the supply of magnesium anticipated to be available; and US Mag undertook extraordinary effort to supply available material to Plaintiff, so as to prevent or limit any disruption to Plaintiff's business activities.  Except as expressly admitted herein, US Mag denies the allegations of paragraph 60.

61.     Responding to the allegations of paragraph 61, US Mag asserts that Kaiser accepted the magnesium supplied to it and thereby waived any purported "off-specification" material supplied.  US Mag undertook reasonable effort to supply available material to Plaintiff, so as to prevent or limit any disruption to Plaintiff's business activities.  Except as expressly admitted herein, US Mag denies the allegations of paragraph 61.

62.     As to the allegations of paragraph 62, US Mag is without knowledge of purported efforts by Kaiser to acquire magnesium or aluminum scrap to supply its purported needs.  US Mag asserts that at all times, it has acted in good faith in providing Plaintiff reasonable updates and forecasts for the supply of magnesium anticipated to be available; and US Mag undertook extraordinary effort to supply available material to Plaintiff, so as to prevent or limit any disruption to Plaintiff's business activities.  Except as expressly admitted herein, US Mag denies the allegations of paragraph 62.

63.     As to the allegations of paragraph 63, US Mag is without knowledge of any purported basis for Kaiser's declaration of force majeure in July 2022.  US Mag asserts that the terms of the MSA were negotiated by and between US Mag and Alcoa Warrick, LLC.  Kaiser assumed "Buyer's" obligations under the MSA, it was not a party to the agreement at the time of its execution.  The MSA also speaks for itself.  US Mag denies the remaining allegations of paragraph 63.

64.     As to the allegation of paragraph 64, US Mag is without knowledge of Kaiser's customer needs or acquisition of aluminum from sources other than Kaiser, and therefore denies the allegations of paragraph 64.

65.     The allegations of paragraph 65 are denied.

66.     Responding to the allegations of paragraph 66, US Mag admits that it sent another letter to Plaintiff on or about August 24, 2022, as reflected in Exhibit P to Plaintiff's Complaint. US Mag denies any suggestion or insinuation that the letters and emails referenced in Plaintiff's Complaint constitute all of the communications exchanged between the parties in connection with the Force Majeure Declaration.  The August 24, 2022 letter speaks for itself, and US Mag denies any characterization of that letter that is inconsistent with its terms.

67.     Responding to the allegations of paragraph 67, US Mag states that the letter dated August 24, 2022 speaks for itself.  US Mag expressly denies that it engaged in any "scheme" or obscured the causes of its force majeure declaration and therefore denies the remaining allegations of paragraph 67.

68.     As to the allegation of paragraph 68, US Mag is without knowledge of Kaiser's acquisition of magnesium or the purported causes of its force majeure declaration, and therefore denies such allegations.  US Mag denies the remaining allegations of paragraph 68.

69.     Responding to the allegations of paragraph 69, US Mag admits that it sent another letter to Plaintiff on or about September 20, 2022, as reflected in Exhibit Q to Plaintiff's Complaint.  US Mag denies any suggestion or insinuation that the letters and emails referenced in Plaintiff's Complaint constitute all of the communications exchanged between the parties in connection with the Force Majeure Declaration.  The September 20, 2022 letter speaks for itself, and US Mag denies any characterization of that letter that is inconsistent with its terms.  US Mag denies the remaining allegations of paragraph 69.

70.     The allegations of paragraph 70 are denied.

///

///

<u>**COUNT I**</u>

**(Force Majeure Declaration)**

71.     Responding to the allegations of paragraph 71, US Mag repeats, affirms, and incorporates all prior responses to Plaintiff's allegations.

72.     The allegations of paragraph 72 are admitted.

73.     The allegations of paragraph 73 are a legal argument and therefore do not require a response.  To the extent a response is required, US Mag denies the allegations of paragraph 73.

74.     The allegations of paragraph 74 are denied.

75.     The allegations of paragraph 75 are denied.

76.     Responding to the allegations of paragraph 76, US Mag states that the MSA speaks for itself.  US Mag denies any characterization of the MSA that is inconsistent with its terms.  Except as expressly admitted herein, the allegations of paragraph 76 are denied.

77.     The allegations of paragraph 77 are denied.

78.     Responding to the allegations of paragraph 78, US Mag states that it at all times conformed with its obligations under the MSA, specifically those requiring it to supply a pro rata allocation of magnesium during force majeure.  US Mag states that the letters dated August 24, 2022 and September 20, 2022 speak for themselves.  US Mag denies any characterization of those letters or the MSA that are inconsistent with their terms.  Except as expressly admitted herein, the allegations of paragraph 78 are denied.

79.     The allegations of paragraph 79 are denied.

80.     As to the allegation of paragraph 80, US Mag is without knowledge of Kaiser's acquisition of magnesium or the purported causes of its force majeure declaration, and therefore

denies such allegations.  US Mag denies that it breaches any provision of the MSA.  Except as expressly admitted herein, the allegations of paragraph 80 are denied.

81.     The allegations of paragraph 81 are denied.

82.     The allegations of paragraph 82 are denied.

83.     The allegations of paragraph 83 are denied.

## COUNT II

### (Safety Stock)

84.     Responding to the allegations of paragraph 84, US Mag repeats, affirms, and incorporates all prior responses to Plaintiff's allegations.

85.     Responding to the allegations of paragraph 85, US Mag admits that paragraph 2(d) of the MSA contains a provision in regard to "safety stock."  US Mag reiterates and affirms that the force majeure provisions contained in paragraph 20 of the MSA excused US Mag from all obligations under the MSA, including the obligation to maintain or provide a 60-day supply of material to Plaintiff.  Indeed, paragraph 20(d) of the MSA specifically states that in the event of a force majeure, "Purchaser [Kaiser] shall receive a pro rata allocation of the available total volume of such Product ... based upon the percentage of Purchaser's contracted volume…"  The MSA says nothing about requiring delivery of the "safety stock" on top of this pro rata allocation.

86.     The allegations of paragraph 86 are a legal argument and therefore do not require a response.  To the extent a response is required, US Mag denies the allegations of paragraph 86.

87.     Responding to the allegations of paragraph 87, US Mag states that the MSA speaks for itself.  US Mag denies any characterization of the MSA that is inconsistent with its terms.  Except as expressly admitted herein, the allegations of paragraph 87 are denied

88.     The allegations of paragraph 88 are denied.

89.     The allegations of paragraph 89 are denied.

90.     The allegations of paragraph 90 are denied.

91.     The allegations of paragraph 91 are denied.

92.     The allegations of paragraph 92 are denied.

## PRAYER FOR RELIEF

93.     Responding to the allegations of paragraph 93, US Mag repeats, affirms, and incorporates all prior responses to Plaintiff's allegations.

94.     US Mag denies each and every prayer for relief set forth in paragraphs 94(a) through 94(e) of Plaintiff's Complaint.

## FIRST DEFENSE

The Complaint, including every cause of action and prayer for relief set forth therein, fails to state a claim upon which relief may be granted.  US Mag reiterates and affirms its responses above and states that it has complied with the terms of the MSA and has properly declared force majeure due to events outside of its control.  US Mag has acted in good faith in providing Plaintiff reasonable updates and forecasts for the supply of magnesium anticipated to be available; and US Mag has undertaken extraordinary effort to supply available material to Plaintiff, so as to prevent or limit any disruption to Plaintiff's business activities. The force majeure provisions contained in paragraph 20 of the MSA excused US Mag from all obligations under the MSA, including the obligation to maintain or provide a 60-day supply of material to Plaintiff.  The MSA says nothing about requiring delivery of the "safety stock" on top of this pro rata allocation.  US Mag has and will continue to supply Kaiser its pro rata allocation of magnesium under the terms of the contract until the force majeure event has been resolved.

## SECOND DEFENSE

The Complaint, including every cause of action and prayer for relief set forth therein, is barred by the language of the parties' Magnesium Supply Agreement, including but not limited to paragraph 20(d) of the MSA the force majeure provision which relieves US Mag of its contractual obligations, including maintaining any safety stock and delivering magnesium beyond Kaiser's pro rata allocation.

## THIRD DEFENSE

The Complaint, including every cause of action and prayer for relief set forth therein, is barred by the doctrines of impossibility, impracticability, and frustration of purpose. As set forth herein, US Mag's ability to comply with the terms of the MSA has been frustrated and rendered impossible and impracticable due to the force majeure event. US Mag will continue to comply with the terms of the MSA once the force majeure event has been resolved.

## FOURTH DEFENSE

The Complaint, including every cause of action and prayer for relief set forth therein, is barred by the Uniform Commercial Code, including but not limited to section NY UCC 2-615. As set forth herein, US Mag's ability to perform under the MSA has been hampered by the force majeure event. Pursuant to section 2-615 if the Uniform Commercial Code, US Mag informed Kaiser of the force majeure event and has supplied Kaiser with a pro rata allocation of materials until the force majeure event is resolved.

## FIFTH DEFENSE

The Complaint, including every cause of action and prayer for relief set forth therein, is barred by stipulated amendments to the parties' Magnesium Supply Agreement to the extent that

Kaiser has accepted magnesium from US Mag that does not meet the specifications set forth in the Magnesium Supply Agreement.

## SIXTH DEFENSE

The Complaint, including every cause of action and prayer for relief set forth therein, is barred by the doctrines of waiver and estoppel to the extent that Kaiser has accepted magnesium from US Mag that does not meet the specifications set forth in the Magnesium Supply Agreement.

## SEVENTH DEFENSE

The Complaint, including every cause of action and prayer for relief set forth therein, is barred by Plaintiff's failure to reasonably mitigate any losses or harms it purports to have sustained as a result of any actions or inactions on the part of US Mag.  Kaiser has not taken appropriate steps to resolve the purported disruptions to its production, including without limitation acquiring substitute or alternative materials from third parties.

## EIGHTH DEFENSE

The Complaint, including every cause of action and prayer for relief set forth therein, is barred by the doctrine of accord and satisfaction to the extent that Kaiser has accepted magnesium from US Mag that does not meet the specifications set forth in the Magnesium Supply Agreement.

## NINTH DEFENSE

The damages sought by Plaintiff in this action are expressly limited and excluded by paragraph 8 of the MSA.  Paragraph 8 states:

> Seller's liability with respect **to this Agreement and the Material purchased under it shall not exceed to the purchase price of the shipment of such Material as to which liability arises** and Seller shall not be liable for any injury, loss or damage resulting from the handling or use of the materials shipped hereunder

whether in manufacturing process or otherwise. ***In no event shall Seller be liable for incidental or consequential damages***

(Emphasis added). Pursuant to these clear and unambiguous terms, any purported cover damages Kaiser claims to have suffered are limited to the cost of magnesium under the MSA. Further, any and all consequential and incidental damages, including Kaiser's purported "lost profits" and lost "opportunity costs," without exclusion, are barred by the plain terms of the MSA.

## TENTH DEFENSE

The damages sought under Plaintiff's Complaint are barred because Kaiser its damages claimed under its Amended Complaint by way of commodity surcharge agreements which allowed Kaiser to pass-along increased magnesium costs to its customers. An award of the damages claimed by Kaiser in this case will amount to an inequitable windfall and should therefore be precluded.

## ELEVENTH DEFENSE

The damages sought in Plaintiff's Complaint are barred because they are the fault of third parties and not the fault of US Mag.

## TWELFTH DEFENSE

US Mag reserves the right to assert additional defenses as facts are discovered in these proceedings.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Defendant US Magnesium hereby demands trial by jury in this action of all issues so triable.

///

///

BLANK ROME LLP
*Counsel for Defendant US Magnesium, LLC*

DATED this 20th day of June, 2023.          /s/ Martin S. Krezalek
                                            Martin S. Krezalek
                                            1271 Avenue of Americas
                                            New York, NY 10020
                                            (212) 885-5000


BURBIDGE | MITCHELL
*Counsel for Defendant US Magnesium, LLC*

DATED this 20th day of June, 2023.          /s/ Richard D. Burbidge
                                            Richard D. Burbidge
                                            215 South State Street, Suite 920
                                            Salt Lake City, UT 84109
                                            (801) 355-6677