# BURBIDGE |

TRIAL LAW
PARKSIDE
215 SOUTH STATE ST
SALT LAKE CITY, UT

TELEPHONE
) 355-6677

FACSIMILE NUMBER
) 355-2341

CAROLYN LeDUC

September 29, 2023

**VIA ECF**

Hon. Katharine H. Parker
United States District Court
Southern District of New York
500 Pearl Street, Room 750
New York, NY 10007

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:
> DATE FILED: 10/04/2023
>
> Plaintiff shall file a letter in response of no more than five pages by Monday, October 9, 2023. A conference is scheduled for October 11, 2023 at 11:30 am in Courtroom 17-D, US Courthouse, 500 Pearl Street, New York, NY.
>
> **APPLICATION GRANTED**
>
> */s/ Katharine H. Parker*
> Hon. Katharine H. Parker, U.S.M.J.    10/04/2023

Re: *Kaiser Aluminum Warrick, LLC v. US Magnesium, LLC,* Case No. 1:22-cv-03105-JGK-KHP

Dear Judge Parker:

On behalf of Defendant US Magnesium, LLC ("US Mag"), we write pursuant to Rule II.B of the Court's Individual Practices and Local Rule 37.2 to <u>request a pre-motion conference concerning US Mag's proposed motion to strike Kaiser Aluminum Warrick, LLC's ("Kaiser") untimely disclosure of many new third-party witnesses.</u>

As the Court is aware, this matter involves a commercial dispute between Kaiser and US Mag, two industrial manufacturing companies. Pursuant to the terms of a Magnesium Supply Agreement, US Mag agreed to supply magnesium to Kaiser from the start of December 2020 through the end of December, 2022. Due to catastrophic and unforeseen equipment failures, however, US Mag declared force majeure in the fall of 2021 and thereafter reduced its supply of magnesium to Kaiser. In this suit Kaiser has challenged the legitimacy of US Mag's force majeure. Kaiser seeks to recover not only cover damages, but also "lost profits" that allegedly arose when Kaiser, purportedly short on magnesium, declared force majeure to its own customers in the summer of 2022.

Kaiser's "lost profits" theory was asserted in an Amended Complaint filed over a year ago. Yet throughout the fact discovery period, Kaiser never identified a single third-party witness whom it planned to call to testify in support of its asserted "lost profits" damages.

Months ago, US Mag served subpoenas on a few of Kaiser's customers—not because Kaiser had signaled it planned to call any representatives from these customers to testify, but rather because there were certain issues that <u>US Mag</u> considered exploring from these third-party entities. Upon review of documents produced by these third-party entities, US Mag later determined not to go forward with these third-party depositions. That decision was made just a few weeks ago—with the end of fact discovery quickly approaching. That decision, importantly, was made in part because Kaiser itself had never signaled that it planned to call any third-party witness to testify. The few depositions scheduled, accordingly, were canceled. However, one

Hon. Katharine H. Parker
September 29, 2023
Page 2

business day after US Mag disclosed that it no longer intended to depose those few third-party witnesses, Kaiser suddenly served a new "supplemental" disclosure in which Kaiser disclosed, for the first time, that Kaiser may call dozens of new third-party witnesses. Specifically, Kaiser disclosed the following new witnesses:

> Justin Driscoll
> Jennifer Tsai
> Charles Rogers
> Elena Carroll
> Michael Arena
> Abby Crowley
> Logan Schnur
> Ian Wilson
> Amado Nieto
> Bryce Roach
> Mark Sidorski
> Laura Storbrauck
> Philip Burgess
> Teri Turschman
> Jason Began
> Francesco Basolli
> Robert McHale
> Christie Breves

Kaiser's complete supplemental disclosure is attached hereto as Exhibit A. The new witnesses are identified starting on pages 6-7 of the disclosure.

On September 20, 2023, the parties conferred over this discovery dispute. Kaiser did not purport to have any excuse or justification for its untimely disclosures. There is no dispute, in other words, that Kaiser has known about these witnesses since the start of this case.

In the discussion concerning this dispute, Kaiser proposed allowing a two-week extension to the fact discovery deadline—as though two weeks of additional time could somehow cure the prejudice of the untimely disclosure of 18 new witnesses.

Kaiser also argued that there should ostensibly be no prejudice to US Mag, since the names of some of these witnesses may have appeared on some documents appearing somewhere in Kaiser's production. Kaiser's production, however, contained well over 250,000 documents. The fact that a name happened to appear on a document produced somewhere in the discovery process does not constitute sufficient "disclosure" of the witness under Rule 26. *See, e.g., Downey v. Adloox*, No. 16-CV-1689 (JMF), 2018 WL 794592, at *1 (S.D.N.Y. Feb. 8, 2018) (observing that mere "knowledge of the existence of a witness does not satisfy the Rule

Hon. Katharine H. Parker
September 29, 2023
Page 3

26(a)(1)(A) disclosure obligation; that obligation is fulfilled only if [Plaintiffs] informed [Defendants] that [they] might call the witness in support of its claims or defenses") (internal quotation marks omitted).

      Within the Second Circuit, courts have considerable discretion in deciding whether to impose sanctions, and if so, what sanctions to impose. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006). Evaluating this issue, courts typically consider four factors: "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[ ]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (internal quotation marks omitted) (first alteration in original).

      In this case, as mentioned above, Kaiser has no excuse for its untimely disclosures. Also, the witnesses are not critical to the case—as demonstrated by Kaiser's own neglect to even consider these witnesses until the eve of the close of discovery. US Mag has been prejudiced by the untimely disclosures, since fact discovery has now concluded. Finally, an extension of time would not cure the prejudice. US Mag's discovery was, appropriately, planned and carried out in light of the disclosures that Kaiser had made about whom it intended to call at trial. Even the depositions that already took place would have been planned and executed differently, had US Mag known and anticipated that Kaiser planned to call these 18 additional witnesses. US Mag should not be put to the burden of extending fact discovery for many more months to accommodate these late disclosures, nor should US Mag suffer the prejudice of having to revisit the discovery that has already occurred. The untimely disclosures, therefore, should be stricken.

      The parties engaged in a follow-up meet and confer on September 26, 2023, and were not able to come to resolution on this issue.

      In sum, US Mag seeks an order striking Kaiser's untimely disclosure of witnesses.

                              Respectfully submitted,
                              BURBIDGE | MITCHELL

                              *Carolyn LeDuc*
                              Carolyn LeDuc

cc:     All Counsel of Record via ECF

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KAISER ALUMINUM WARRICK, LLC, <br><br> Plaintiff, <br><br> -against- <br><br> US MAGNESIUM, LLC, <br><br> Defendant. | Case No. 22-cv-03105-JGK |

**PLAINTIFF KAISER ALUMINUM WARRICK, LLC'S SECOND SUPPLEMENTAL INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(a)(1)**

Plaintiff Kaiser Aluminum Warrick, LLC ("Kaiser"), by its attorneys McDermott Will & Emery LLP, hereby makes the following supplemental initial disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure. Kaiser makes these disclosures based on the information reasonably available at this time and reserves the right to further supplement and modify them as discovery continues. In addition, Kaiser submits these disclosures without waiver of any applicable privilege or right to object to the admissibility at trial of any information contained in or derived from these disclosures.

A. Disclosure Pursuant to Rule 26(a)(1)(A)(i)

Kaiser identifies the following individuals affiliated with Kaiser who may have discoverable information that Kaiser may use to support its claims. Each of these individuals also may have information in rebuttal to US Mag's defenses and excuses, including those expressed US Mag's Answer to Kaiser's Amended Complaint and other pleadings and discovery responses. To the extent those defenses and excuses touch upon the subject matter of their duties or other

1

testimony, Kaiser reserves the right to call these individuals for such purposes as well.

All individuals should be contacted through the undersigned counsel for Kaiser.

1. **Eli Allison**
   Metal Trader in Metals Management Group

   Information regarding the magnesium market, the impact of US Magnesium, LLC's ("US Mag") declaration of force majeure, dated September 29, 2021 (the "Force Majeure Declaration") on Kaiser and associated costs, Kaiser's efforts to acquire magnesium after the Force Majeure Declaration, and other issues and events discussed in Kaiser's Complaint, as such Complaint may be amended from time to time (the "Complaint").

2. **Nick Badgett**
   Director of Raw Materials

   Information regarding the Magnesium Supply Agreement effective October 9, 2020 (the "MSA"), Kaiser's magnesium procurement from US Mag and other sources, communications with US Mag about the Force Majeure Declaration, the impact of the Force Majeure Declaration on Kaiser and associated costs, and other issues and events discussed in the Complaint.

3. **Megan Dicken**
   Assistant Controller, Financial Planning & Analysis Manager

   Information regarding cost analysis, including as to magnesium cover costs, and other issues and events discussed in the Complaint.

4. **John Donnan**
   Executive Vice President, Chief Administrative Officer and General Counsel

   As Executive Vice President, Chief Administrative Officer, and General Counsel, Mr. Donnan has knowledge of all aspects of this case gained as in-house counsel to Kaiser and its affiliates, including Kaiser's magnesium inventory and, the impact of US Mag's force majeure declaration on Kaiser's contracts with third parties. Mr. Donnan also receives information about cover purchases and other costs incurred by Kaiser as a result of US Mag's force majeure declaration.

5. **Steve Fahey**
   Vice President of Global Supply Chain

   Information regarding forecasts and coordination of the purchase and receipt of cover magnesium and related costs, and other issues and events discussed in the Complaint.

6. **Dustin Garrels**
   Director of Business Analysis and Strategy

   Information regarding the impact of the Force Majeure Declaration on Kaiser, including as to pricing and cover costs and lost profits from lost sales due to the Force Majeure Declaration, and other issues and events discussed in the Complaint.

7. **Lee Garrett**
   Quality Superintendent

   Information regarding the rolling mill's casting patterns for the alloys that are run and the amount of magnesium required daily.  Mr. Garrett also runs trials for the qualification of new cover magnesium sources and thus has knowledge about Kaiser's magnesium inventory, efforts to obtain cover magnesium, and the disruptions caused to Kaiser's operations by US Mag's force majeure declaration, and other events discussed in the Complaint.

8. **Leann Harney**
   Commercial Director

   Information regarding Kaiser's communications with its customers concerning the Force Majeure Declaration, the impact of the Force Majeure Declaration on Kaiser, and associated costs and lost profits from lost sales to Kaiser's customers, and other issues and events discussed in the Complaint.

9. **Keith Harvey**
   President and Chief Executive Officer

   As President and Chief Executive Officer, Mr. Harvey oversees Kaiser and its affiliates' management and thus has general knowledge concerning many aspects of this case, including general information about Kaiser's magnesium inventory, Kaiser's efforts to obtain cover magnesium, and the disruptions caused to Kaiser's operations by US Mag's force majeure declaration, and other issues and events discussed in the Complaint, although the other individuals listed herein have direct responsibility for these matters and thus more direct knowledge.

10. **Katherine Hawkins**
    Senior Manager of Manufacturing

    Information regarding Kaiser's use of magnesium, the impact of the Force Majeure Declaration on Kaiser and associated costs, and other issues and events discussed in the Complaint.

11. **Nick Howton**
    Planning Superintendent

    Information regarding changes to the schedule for ingot deliveries to conserve magnesium, and other issues and events discussed in the Complaint.

12. **Nate Kane**
    Raw Materials Manager at the Trentwood facility

    Information regarding communications with US Mag after the Force Majeure Declaration concerning the cause of the Force Majeure Declaration, and other issues and events discussed in the Complaint.

13. **Del Miller**
    Vice President of Treasury Risk and Procurement

    Information regarding the MSA, Kaiser's magnesium procurement from US Mag and other sources, the impact of the Force Majeure Declaration on Kaiser and associated costs, and other issues and events discussed in the Complaint.

14. **Evan Quinley**
    Former Operations Manager and current Senior Manager, Manufacturing Systems

    Oversees the rolling mill's operations and thus has knowledge regarding many aspects of this case including the negotiation and performance of the MSA, Kaiser's magnesium inventory, among other things, sets the aluminum casting schedule, and receives information concerning magnesium forecasts and purchasing, including cover purchases, the impact of the Force Majeure Declaration on Kaiser and associated costs, and other issues and events discussed in the Complaint.

15. **Rick Siegel**
    Director of Sales

    Information regarding Kaiser's magnesium procurement from US Mag and other sources, the impact of the Force Majeure Declaration on Kaiser and associated costs and lost profits from lost sales to Kaiser's customers, and other issues and events discussed in the Complaint.

16. **Jessica Tieman**
    Business Analyst

    Information regarding Kaiser's magnesium inventory, and other issues and events discussed in the Complaint.

17. **Blain Tiffany**
    Executive Vice President – Sales and Marketing

    Information concerning communications with Kaiser's customers regarding lost aluminum production caused by disruptions to Kaiser's magnesium supply, the impact of the Force Majeure Declaration on Kaiser and associated costs and lost profits from lost sales to Kaiser's customers, and other issues and events discussed in the Complaint.

18. **Kevin Tignor**
    Production Technical Assistant

    Information regarding Kaiser's magnesium inventory, and other issues and events discussed in the Complaint.

19. **Jason Walsh**
    Executive Vice President – Manufacturing

    Information about the impact of US Mag's force majeure declaration on Kaiser's contracts with third parties and knowledge about Kaiser's magnesium inventory, efforts to obtain cover magnesium, the disruptions caused to Kaiser's operations by US Mag's force majeure declaration, the impact of the Force Majeure Declaration on Kaiser and associated costs and lost profits from lost sales to Kaiser's customers, and other issues and events discussed in the Complaint.

20. **Neal West**
    Executive Vice President and Chief Financial Officer

    Information regarding the MSA, Kaiser's use of magnesium, the impact of the Force Majeure Declaration on Kaiser and associated costs and lost profits from lost sales to Kaiser's customers, and other issues and events discussed in the Complaint.

21. **Ashley Zellers**
    Controller

    Information regard cost analysis, including as to pricing and cover costs, the impact of the Force Majeure Declaration on Kaiser and associated costs and lost profits from lost sales to Kaiser's customers, and other issues and events discussed in the Complaint.

Kaiser identifies the following individuals affiliated with Kaiser's customers who may have discoverable information that Kaiser may use to support its claims or rebut the defenses and excuses raised by US Mag.

1. **PepsiCo, Inc. ("Pepsi")** – including but not limited to Justin Driscoll, Jennifer Tsai, Charles Rogers, and Elena Carroll

    c/o Alison Ashmore
    Dykema
    1717 Main Street
    Suite 4200
    Dallas, TX 75201

    Information regarding Kaiser's communications with its customers, the negotiation of contractual price adjustments between Kaiser and Pepsi, and Pepsi's response to Kaiser's declaration of force majeure.

2. **Silgan Container ("Silgan")** – including but not limited to Michael Arena

    Information regarding Kaiser's communications with its customers, the negotiation of contractual price adjustments between Kaiser and Silgan, and Silgan's response to Kaiser's declaration of force majeure.

    c/o David Larmore
    21800 Oxnard St., Suite 600
    Woodland Hills, California 91367

3. **Ball Metal Beverage Container Corp. ("Ball")** – including but not limited to Abby Crowley, Logan Schnur, and Ian Wilson

    c/o 9300 West 108th Circle
    Westminster, Colorado 80021

    Information regarding Kaiser's communications with its customers, the negotiation of contractual price adjustments between Kaiser and Ball, and Ball's response to Kaiser's declaration of force majeure.

4. **Anheuser-Busch InBev ("A-B InBev")** – including but not limited to Amado Nieto and Bryce Roach

    c/o Lucas Pendry
    One Busch Place
    St. Louis, Missouri 63118

6

Information regarding Kaiser's communications with its customers, the negotiation of contractual price adjustments between Kaiser and A-B InBev, and A-B InBev's response to Kaiser's declaration of force majeure.

5. **Crown Supply ("Crown") –** including but not limited to Mark Sidorski and Laura Storbrauck

    770 Township Line Road
    Yardley, Pennsylvania 19067

    Information regarding Kaiser's communications with its customers, the negotiation of contractual price adjustments between Kaiser and Crown, and Crown's response to Kaiser's declaration of force majeure.

6. **Ardagh Metal Beverage ("Ardagh") –** including but not limited to Philip Burgess and Teri Turschman

    8770 West Bryn Mawr Avenue, Suite 175
    Chicago, Illinois 60631

    Information regarding Kaiser's communications with its customers, the negotiation of contractual price adjustments between Kaiser and Ardagh, and Ardagh's response to Kaiser's declaration of force majeure.

Kaiser further believes that individual(s) currently or formerly associated with Alcoa Corporation or its affiliates ("Alcoa") may have discoverable information that Kaiser may use to support its claims or rebut the defenses and excuses raised by US Mag include the following: Individuals with knowledge and information concerning the MSA, including, without limitation, Nicolas Ottle, Jason Began, Francesco Basolli, Robert McHale, and Christie Breves.

Kaiser believes that General Electric International Inc., its affiliates, and employees (including, but not limited to, Kevin Sheridan) have discoverable information that Kaiser may use to support its claims or rebut the defenses and excuses raised by US Mag concerning the Force Majeure Declaration and the events giving rise to it and the steps US Mag has taken to eliminate or remedy the event(s) giving rise to the Force Majeure Declaration.

7

Kaiser further believes that individual(s) associated with or identified by US Mag who may have discoverable information that Kaiser may use to support its claims or rebut US Mag's defenses include the following:

1. Individuals with knowledge and information concerning the Force Majeure Declaration and the events giving rise to it, including, without limitation, Ron Thayer, Tom Kurilich, Cam Tissington, Peter Ngai, Cody Nielson, Martin Davis, Remington Lawrence, and Ray Bassani;

2. Individuals with knowledge and information concerning the policies, procedures, equipment, practices, history, information or other materials (including, without limitation, spare parts) for maintaining, replacing, or not replacing the equipment that purportedly failed, including, without limitation, Ron Thayer and any data historian(s) employed by US Mag;

3. Individuals with knowledge and information concerning US Mag's level of capital investment in its plant, including, without limitation, Ron Thayer and individuals affiliated with The Renco Group, Inc.;

4. Individuals with knowledge and information concerning the steps US Mag has taken to eliminate or remedy the event(s) giving rise to the Force Majeure Declaration, including, without limitation, Ron Thayer, Tom Kurilich, Cam Tissington, Peter Ngai, Cody Nielson, Martin Davis, Remington Lawrence, and Ray Bassani;

5. Individuals with knowledge and information concerning the information provided to US Mag's customers concerning the purported mechanical failures that purportedly led to the Force Majeure Declaration, the status of the repairs, the magnesium that US Mag expected and expects or expected to be able to supply while the Force Majeure Declaration is in effect, the timing of anticipated deliveries of magnesium to US Mag's customers while the Force Majeure Declaration is in effect, and US Mag's expectations concerning the timing of lifting the Force Majeure Declaration, including, without limitation, Ron Thayer, Tom Kurilich, and Cam Tissington;

6. Individuals with knowledge and information concerning US Mag's decision not to supply any safety stock to Kaiser, including, without limitation, Ron Thayer, Tom Kurilich, and Cam Tissington;

7. Individuals with knowledge and information concerning quantities of magnesium US Mag had on hand at the time of the Force Majeure Declaration and since the Force Majeure Declaration has been in effect, including, without limitation, Ron Thayer, Tom Kurilich, and Cam Tissington;

8. Individuals with knowledge and information regarding calculations or methodologies that US Mag used to develop US Mag's allocation of magnesium amongst US Mag's

8

customers while the Force Majeure Declaration is in effect, including, without limitation, Ron Thayer, Tom Kurilich, and Cam Tissington;

9. Other individuals currently or formerly employed by US Mag with knowledge about the maintenance of US Mag's plant and the equipment failure that purportedly gave rise to the Force Majeure Declaration, including, without limitation Ron Thayer, Tom Kurilich, Cam Tissington, Peter Ngai, Cody Nielson, Martin Davis, Remington Lawrence, and Ray Bassani;

10. Custodians of records for US Mag and Kaiser; and

11. Individuals or entities identified by US Mag in its initial disclosures, including, without limitation, agents and representatives of Universal Plant Services (including Chris Lab), Doosan Turbomachinery Services, General Electric International Inc., Core Industrial Group, LLC (including Gary Taylor), and Dennis Miller.

Discovery is ongoing and there may be other persons or entities that have relevant knowledge. Kaiser reserves the right to supplement this response to identify such other persons and entities.

Further, other employees and representatives of Kaiser, US Mag, or non-parties or other individuals may be revealed in discovery as likely to have relevant knowledge or other discoverable information concerning this lawsuit and that Kaiser may use to support its claims. Kaiser incorporates identification of those individuals by reference to the documents to be produced in this lawsuit, deposition transcripts, and other discovery that reveals these individuals.

B. Disclosure Pursuant to Rule 26(a)(1)(A)(ii)

Kaiser has identified the following categories of documents in its possession, custody, or control that it may use to support its claims:

1. Documents and communications concerning the MSA;

2. Documents and communications concerning Kaiser's magnesium inventory before and during the Force Majeure Declaration;

3. Documents and communications concerning Kaiser's need for magnesium before and during the Force Majeure Declaration;

9

4. Documents and communications concerning the disruption to Kaiser's business and the damages to Kaiser caused by the Force Majeure Declaration, including cover and lost profits;

5. Documents and communications concerning commitments or agreements by which Kaiser promised to supply Kaiser's customers with product for which magnesium is a raw material; and

6. Documents and communications concerning Kaiser's efforts to obtain magnesium from alternative sources while the Force Majeure Declaration has been in effect, including, but not limited to, Kaiser's investigation of alternative sources and its sourcing decisions, as well as Kaiser's attendant damages.

These categories of documents are located in Kaiser's files. Documents concerning the negotiation and performance of the MSA are also located in the files of the Alcoa, which documents Kaiser requested from Alcoa to produce to US Mag in response to US Mag's document requests. Documents concerning Kaiser's communications with its customers and the commitments or agreements by which Kaiser promised to supply its customers with product for which magnesium is a raw material, and the negotiation and amendment thereof, are also located in the files of Kaiser's customers, and have been subpoenaed by US Mag.

By describing these categories, Kaiser does not waive and expressly reserves its right to object to production on the basis of privilege, work product protection, relevance, undue burden, disproportionality to the needs of the case, or any other ground. Kaiser reserves the right to supplement and/or amend this list as discovery progresses. Further responsive and relevant material, to the extent that it exists, will either be produced or made available for inspection upon a proper request, except that no privileged or confidential information documents will be disclosed in the absence of a protective order or confidentiality agreement.

C. Disclosure Pursuant to Rule 26(a)(1)(A)(iii)

Kaiser's total calculable damages exceed $79 million. They consist of compensatory damages to cover the losses incurred by Kaiser as a result of having to purchase large quantities of magnesium from other suppliers at substantially higher prices than those contained in the MSA as well as lost profits that Kaiser suffered after July 7, 2022, when Kaiser declared force majeure to its customers as a result of having an inadequate supply of magnesium due to US Mag's Force Majeure Declaration and the precipitous drop in allocated magnesium deliveries from US Mag starting in June 2022.

Kaiser refers to KAISER00115786 for a detailed calculation of its damages and to Kaiser's supplemental response to US Mag's Interrogatory No. 6 for a further description of its damages. Kaiser expects these calculations to be further detailed, refined, and amended or supplemented as necessary and appropriate prior to trial, including through expert testimony, all of which, as well as Kaiser's responses to US Mag's interrogatories and other discovery, is incorporated herein by reference as if set forth in full.

D. Disclosure Pursuant to Rule 26(a)(1)(A)(iv)

Because US Mag has denied Kaiser and its insurers access to US Mag's plant and other information sufficient to explain the cause of the Force Majeure Declaration, Kaiser has been unable to ascertain whether any insurance agreements would cover the damages suffered by Kaiser as a result of the Force Majeure Declaration. Kaiser is also unaware of any insurance agreements that US Mag has that could be used satisfy all or part of a possible judgment in the action against US Mag or to indemnify or reimburse for payments made to satisfy a judgment against US Mag. Kaiser requests prompt disclosure of any such insurance in favor of US Mag.

11

| | |
|---|---|
| Dated: New York, New York<br>September 18, 2023 | **MCDERMOTT WILL & EMERY LLP**<br><br>/s/ *Andrew B. Kratenstein*<br>Andrew B. Kratenstein<br>Monica S. Asher<br>Timothy Cramton<br>One Vanderbilt Avenue<br>New York, New York 10017<br>(212) 547-5400<br><br>*Attorneys for Plaintiff*<br>*Kaiser Aluminum Warrick, LLC* |

## CERTIFICATE OF SERVICE

    I, Monica S. Asher, an attorney, hereby certify that on September 18, 2023, I served a true and complete copy of Kaiser Aluminum Warrick, LLC's Second Supplemental Initial Disclosures by email on all counsel of record.

                                                      */s/ Monica S. Asher*
                                                      Monica S. Asher